## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**CEDEAL T. HARPER,**

      **Plaintiff,**

**v.**                              **Case No. 2:12-cv-00656**

**CAPT. MCCLOUD, WARDEN DAVID BALLARD,**
**and COMMISSIONER JIM RUBENSTEIN,**
**all in their individual and official capacities,**

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the Motion to Dismiss filed by defendants Jim Rubenstein and David Ballard (ECF No. 25) and the plaintiff's Motion for Default Judgment and/or Partial Default Judgment (ECF No. 28.)  This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### PLAINTIFF'S ALLEGATIONS AND FACTUAL BACKGROUND

The plaintiff's Complaint alleges that defendant McCloud engaged in the excessive use of force when he pepper sprayed the plaintiff in his segregation cell in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment.  The plaintiff's Complaint further alleges claims of supervisory liability against defendants Ballard and Rubenstein.  The plaintiff seeks monetary damages, as well as declaratory and injunctive relief.

Specifically, the plaintiff alleges that, on January 20, 2012, he called for assistance to obtain documents that he needed for a hearing on a habeas corpus petition in court the following day, but was ignored.  The plaintiff further acknowledges that he began kicking his cell door and eventually stopped up his toilet and flooded his cell to get a response.  The plaintiff further alleges that defendant McCloud arrived with other correctional officers and, without warning, began to spray pepper spray into the plaintiff's enclosed cell at his face for about one minute, and then slammed the plaintiff's food slot ("bean hole") shut.  The plaintiff further alleges that McCloud never gave him any commands or orders, but subsequently wrote up the plaintiff for creating a disturbance and refusing an order.

The plaintiff further alleges that he waited a long time to see a nurse, in order to examine him and allow him to wash off the pepper spray.  The plaintiff alleges that he suffered residual effects from the pepper spray for approximately four weeks.  The plaintiff further alleges that the use of pepper spray in this incident was excessive and unreasonable under the circumstances, in violation of his constitutional rights, and not in accordance with the DOC's procedures.

The plaintiff further alleges that defendants Ballard and Rubenstein are liable as supervisors because, on several occasions prior to the January 20, 2012 incident, McCloud and other officers supervised by these defendants used or permitted the use of pepper spray in an unjustified manner for a malicious or sadistic purpose, and that the supervisory defendants were aware of years of widespread and pervasive abuse of inmates.  The plaintiff further alleges that these supervisory defendants failed to properly investigate, train, supervise and discipline their officers.  The plaintiff further

alleges that defendants Ballard and Rubenstein, as policymakers, had actual knowledge of abuse and use of excessive force by the officers at MOCC.

## **STANDARD OF REVIEW**

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
> * * *
>      In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

The defendants' motion will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

## ANALYSIS

**A.    The claims for monetary damages against the defendants in their official capacities are prohibited under the Eleventh Amendment to the United States Constitution.**

The defendants, all of whom are employees of the West Virginia Division of Corrections, contend that, to the extent that the plaintiff's claims are asserted against them in their official, as opposed to their individual capacities, the plaintiff's claims for retroactive monetary relief are prohibited by the Eleventh Amendment to the United States Constitution.  In *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), the Supreme Court stated:

> Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.  We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.  The judgment of the Michigan Supreme Court is affirmed.  [Citations omitted].

Based upon this authority, the defendants assert that they are immune from suit on the plaintiff's claims in their official capacities.  (ECF No. 27 at 3-5.)  However, the undersigned notes that the *Will* decision also states that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against

the State.'" 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 472 U.S. 159, 167 n.14 (1985); *see also Ex Parte Young*, 209 U.S. 123, 159-160 (1908)).[1]

Pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). The Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose a liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984). Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds. *Id.* at 337. Moreover, a State is not a "person" for purposes of section 1983 litigation. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *Kentucky v. Graham*, 473 U.S. 159 (1985).

Among other forms of relief, the plaintiff is seeking retroactive monetary relief from State officials in this matter, which is barred by the Eleventh Amendment of the United States Constitution. For this reason, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which monetary relief can be granted against the defendants in their official capacities.

---

[1]  To the extent that the plaintiff seeks injunctive relief against these defendants in their official capacities, such claims are not barred by the Eleventh Amendment. Thus, none of the defendants are entitled to complete dismissal from this matter at the present time.

## B.      The plaintiff's claims against the defendants in their individual or personal capacities.

The defendants' Motion to Dismiss and Memorandum in support thereof also argues that the plaintiff's Complaint fails to sufficiently state a claim upon which relief can be granted against defendants Ballard and Rubenstein, and that these defendants are entitled to qualified immunity on the plaintiff's claims made against them in their individual capacities.  As noted in the defendants' Memorandum:

> Qualified immunity is designed to protect public officials from the threat of litigation resulting from decisions made in the course of their employment.  *See Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995). In order to sustain a viable claim against a State agency or its employees or officials acting within the scope of their authority sufficient to overcome this immunity, it must be established that the agency employee or official knowingly violated a clearly established law, or acted maliciously, fraudulently, or oppressively.  *Parkulo v. W. Va. Bd of Probation*, 199 W. Va. 161, 483 S.E.2d 507 (1996).  In other words, the State, its agencies, officials, and employees are immune for acts or omissions arising out of the exercise of discression [sic; discretion] in carrying out their duties, so long as they do [not] violate any know[n] law or act with malice or bad faith.  *Id. syl. Pt. 8.*

(ECF No. 27 at 9-10.)   The defendants' Memorandum further asserts that the plaintiff's claims against them "allege deficiencies in the management of subordinates, which is a discretionary, administrative function, and which falls under the protection and [sic; of] qualified immunity."   (*Id.* at 10.)   The defendants' further assert that the plaintiff's allegations that the defendants' actions were willful, wanton, intentional, malicious, callous and reckless are merely conclusory allegations that are insufficient to overcome this qualified immunity.  (*Id.*)

Although the defendants have cited West Virginia case law, the federal authority on qualified immunity applies the same principles, establishing that "[g]overnment officials performing discretionary functions are entitled to qualified immunity from

liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998).

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take <u>reasonable</u> measures to guarantee the safety of the inmates.'" [Emphasis added]  This is a low standard.  The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833.

In *Hudson v. McMillan*, 503 U.S. 1 (1992), the Supreme Court held that use of excessive physical force against an inmate may constitute cruel and unusual punishment even when the inmate does not suffer serious injury.  The Court held "that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley [v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  503 U.S. at 6.  The majority opinion noted that "[t]he objective component of an Eighth Amendment claim is therefore contextual and responsive to 'contemporary standards of decency.'" 503 U.S. at 8. [Citation omitted.]

> In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.  [Citation omitted.] This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some

arbitrary quantity of injury.  Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today. * * *

That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. [Citation omitted.]  The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." [Citations omitted.]

*Id.*, at 9-10.  Near the conclusion of the opinion, Justice O'Connor wrote: "To deny, as the dissent does, the difference between punching a prisoner in the face and serving him unappetizing food is to ignore the 'concepts of dignity, civilized standards, humanity and decency' that animate the Eighth Amendment."  *Id.*, at 11.

The Supreme Court, however, rejected an argument that an objective test of deliberate indifference be established.

We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  Thus, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety."  *Id.* at 834. (Citations omitted.)  The negligent failure to protect inmates from violence will not suffice.  *Pressly*, 816 F.2d at 979.

Furthermore, in *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved prior

constitutional violations. Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." 13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).

The defendants' Memorandum asserts that the plaintiff has not demonstrated that defendants Ballard and Rubenstein acted with deliberate indifference to his safety, stating as follows:

> All the Plaintiff's allegations against Commissioner Rubenstein and Warden Ballard contained in the Amended Complaint are entirely conclusory and form like recitals of the legal elements of the claim of supervisory liability, without one single supporting fact that can lead this Court to conclude the Plaintiff's claims for Supervisory liability are plausible, as opposed to merely "possible." *Ashcroft* [referred to by the court as *Iqbal*] requires that the Plaintiff demonstrate to some degree, the supporting factual basis upon which the claim for Supervisory liability is based. The allegations in the Complaint do not meet this standard and, therefore, it is proper for this Court to dismiss these Defendants from the above-captioned matter.

(ECF No. 27 at 9.)

At this stage of the proceedings, based upon the facts alleged in the Complaint taken in the light most favorable to the plaintiff, the undersigned cannot find that the defendants' conduct, under the circumstances, did not violate a clearly established constitutional right of which a reasonable person would have known. Thus, the undersigned proposes that the presiding District Judge **FIND** that the allegations in the plaintiff's Complaint states enough facts to state a claim to relief that is plausible on its face against defendants Ballard and Rubenstein, and that the facts presently before the court are insufficient to establish that these defendants are entitled to qualified immunity.

9

**C.**     **The plaintiff's Motion for Default Judgment and/or Partial Default Judgment.**

On June 5, 2012, the plaintiff filed a Motion for Default Judgment and/or Partial Default Judgment (ECF No. 28), premised on his belief that defendants Ballard and Rubenstein had not timely filed a response to his Amended Complaint. However, defendants Ballard and Rubenstein did timely file the instant Motion to Dismiss (ECF No. 26), but it appears that the plaintiff was not served with a copy thereof, prior to filing the motion for default judgment.

Because defendants Ballard and Rubenstein timely filed a response to the plaintiff's Amended Complaint, the undersigned proposes that the presiding District Judge **FIND** that these defendants are not in default, and there is no basis for a default judgment against them.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by defendants Ballard and Rubenstein (ECF No. 25), to the extent that the defendants have been sued for monetary damages in their official capacities, and otherwise **DENY** the Motion to Dismiss. It is further respectfully **RECOMMENDED** that the presiding District Judge **DENY** the plaintiff's Motion for Default Judgment and/or Partial Default Judgment (ECF No. 28), and leave this matter referred to the undersigned United States Magistrate Judge for additional proceedings.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the

parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to the plaintiff and to transmit a copy to counsel of record.

 July 12, 2012

Mary E. Stanley
United States Magistrate Judge